[Sac. No. 927.   Department One. — August 26, 1901.]

STOCKTON SCHOOL DISTRICT OF SAN JOAQUIN COUNTY, Respondent, v. E. B. WRIGHT, County Superintendent, etc., Appellant.

SCHOOL FUNDS — STATE AND COUNTY TAXES — SUPPORT OF COMMON SCHOOLS. — The school law contemplates and requires that all school funds raised from state and county school taxes shall be applied exclusively to the support of common schools, consisting of primary and grammar schools in each school district.

ID. — APPORTIONMENT BY COUNTY SUPERINTENDENT — "AVERAGE DAILY ATTENDANCE" IN DISTRICT — SPECIAL SCHOOLS NOT INCLUDED. — The apportionment required to be made by the county superintendent of the unapportioned residue of the school funds " to the several districts, in proportion to the average daily attendance in each district during the preceding year," must be based upon the " average daily attendance " in the common schools of the district, not including attendance upon any high school or evening school established therein.

ID. — STATUTORY CONSTRUCTION — LEGISLATIVE INTENT — ABSURDITY. — In the interpretation of a statute the court must look at the context, and the result that would follow, in order to arrive at the legislative intent. A literal construction will not always obtain, particularly when such construction leads to an absurdity.

APPEAL from a judgment of the Superior Court of San Joaquin County.   Joseph H. Budd, Judge.

The facts are stated in the opinion.

A. H. Ashley, for Appellant.

Ed. R. Thompson, and J. G. Swinnerton, for Respondent.

COOPER, C. — This appeal is from a judgment awarding plaintiff a writ of mandate against defendant, in his official capacity, commanding him to apportion to plaintiff $4,630.13 of public school moneys.

A demurrer was filed to the petition, and upon its being overruled, defendant answered, setting forth facts which are practically conceded to be true. As the facts are substantially agreed upon, it will not be necessary to pass upon the ruling on the demurrer.

Plaintiff is a school district of the county of San Joaquin,

and defendant is the county superintendent of common schools in said county.

The amount of money sought to be apportioned — and which was directed to be apportioned by the judgment—is school money raised by state and county school taxes, and is not money raised by special or high school taxes. It is claimed that it is the duty of defendant, in his official capacity, to apportion the money to plaintiff, under subdivision 4 of section 1858 of the Political Code, which provides that all school money remaining on hand after certain apportionments "must be apportioned to the several districts in proportion to the average daily attendance in each district during the preceding school year." The question is as to the meaning of the words, "average daily attendance." Do they mean average daily attendance in the common schools of the district? or do they mean the average daily attendance in all the schools, including the high school and evening schools? It is necessary to consider other sections and provisions of the code and of the constitution, so that the intent of the legislature may be ascertained.

It is provided in section 5 of article IX of the constitution, that the "legislature shall provide for a system of common schools, by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." Section 6 of the same article provides: "The public school system shall include primary and grammar schools, and such high schools, evening schools, normal schools, and technical schools as may be established by the legislature, or by municipal or district authority; but the entire revenue derived from the state school fund and the state school tax shall be applied exclusively to the support of primary and grammar schools." The provisions of the Political Code follow in this respect the constitutional provisions. It is conceded by plaintiff that the entire revenue derived from the state school tax must be applied exclusively to the support of primary and grammar schools, and that none of the money here sought to be apportioned can be used for the support of the high school or the evening schools of said district.

Provision is made, in the various sections of the Political Code, for the formation of school districts in the several

counties and cities and counties of the state. It is made the duty of the county superintendent to apportion the school moneys to each school district, as provided in section 1858, at least four times a year. If, in any district, there has been an average daily attendance of only five, or less, during the whole school year, the superintendent shall suspend the district and report such fact to the board of supervisors. (Pol. Code, sec. 1543.) It is the duty of the census marshal of each district to take, annually, a census of all children under seventeen years of age who were residents of the district on the fifteenth day of April preceding the taking of the census. This census must include all children who are absent attending institutions of learning, and whose parents or guardians are residents of the district; the children of Indian parents who pay taxes, and who are not living in the tribal relation; orphan children absent from the district, whose guardians reside in the district; and native-born Chinese children. (Pol. Code, secs. 1634–1637.)

This census is the basis for the apportionment of public school moneys to the various districts. All children who are residents of the district must be counted, even if absent attending some other school. All schools must be open for the admission of all children between six and twenty-one years of age residing in the district, and must, unless otherwise provided by law, be divided into primary and grammar grades. (Pol. Code, secs. 1622, 1623.)

All state school moneys apportioned by the superintendent of public instruction must be apportioned to the several counties in proportion to the number of school census children between the ages of five and seventeen years, as shown by the returns of the school census marshals of the preceding school year. (Pol. Code, sec. 1858.) After the money is so apportioned to the several counties by the superintendent of public instruction, it is provided that the school superintendent in each county must apportion all state and county school moneys as follows: —

"1. He must ascertain the number of teachers each district is entitled to, by calculating one teacher for every seventy school census children, or fraction thereof not less than twenty school census children, as shown by the next preceding school census; provided, that all children in any asylum, and not attending the public schools, of whom the authorities of said

asylum are the guardians, shall not be included in making the estimate of the number of teachers to which the district in which the asylum is located is entitled.

"2. He must ascertain the total number of teachers for the county, by adding together the number of teachers assigned to the several districts.

"3. Five hundred dollars shall be apportioned to each district for every teacher assigned to it; provided, that to districts having ten and less than twenty school census children shall be apportioned four hundred dollars; provided further, that to districts having over seventy school census children and a fraction of less than twenty, there shall be apportioned twenty dollars for each census child in said fraction.

"4. All school money remaining on hand after apportioning to the districts the moneys provided for in subdivision 3 of this section must be apportioned to the several districts in proportion to the average daily attendance in each district during the preceding school year. Census children, wherever mentioned in this chapter, shall be construed to mean those between the ages of five and seventeen years." (Pol. Code, sec. 1858.)

It will be noted that, under subdivision 4 of said section, the entire apportionment by the state superintendent to the counties, and by the county superintendent to the district, refers to census children as those between the ages of five and seventeen years. Each county gets its share of the state school moneys, by counting the census children between the ages of five and seventeen years, whether such children are absent from the county attending other institutions of learning or not. So each district gets its share of the state and county school moneys, under the first, second, and third subdivisions of the section, by reference to the census children, or fraction thereof, whether such children are absent from the district attending other schools or not. It is therefore evident that it is the purpose of the law that all state and county school moneys shall be used exclusively for the support of the primary and grammar district schools. The proper proportionate amount for each census child of the district is thus intended to be given upon a just representation. Then the remaining moneys on hand must go to the several districts, "in proportion to the average daily attendance in each district for the preceding school year." "Each district" refers to the district schools,— to the primary and grammar schools. The whole object and

intent of the several sections was to provide for the use of the public school moneys in the primary and grammar district schools.

The average daily attendance upon the district school in each district was thought to be a just basis upon which to apportion the remaining moneys. It was not intended to include the average daily attendance in a high school or evening school, which was not entitled to any of such school moneys. This would be representation without taxation. If no part of the moneys can be used for such high school or other institution of learning in the district outside the primary and grammar schools, why should such average daily attendance be counted? It can readily be seen that two adjoining districts of a county might have precisely the same average daily attendance upon the primary and grammar schools of each district; in one district there might be high schools and evening schools with three times as great an average daily attendance as the district school. Under respondent's contention, the district with such high school and evening schools located therein would receive four times as much money as the other district. This money would have to be used for the primary and grammar schools of the district, thus giving each school child in the fortunate district four times as much money for his education as the less fortunate child in the other district would receive. The legislature never contemplated any such absurd result. While it is not the business of the court to make a statute, yet in the interpretation thereof it must look at the context and the result that would follow, in order to arrive at the intent. A literal construction will not always obtain, particularly when such construction leads to an absurdity. (*People* v. *Craycroft*, 111 Cal. 544.)

We advise that the judgment be reversed and the court below directed to dismiss the proceedings.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the court below directed to dismiss the proceedings.      Garoutte, J., Van Dyke, J., Harrison, J.