[L. A. No. 1837. In Bank.—December 27, 1905.]

LOS ANGELES COUNTY, Petitioner, v. THOMAS J. KIRK, Superintendent of Public Instruction, Respondent.

PUBLIC SCHOOLS — APPORTIONMENT OF SCHOOL FUND — AVERAGE DAILY ATTENDANCE — PRIMARY AND GRAMMAR SCHOOLS. — Section 6 of article IX of the constitution, declaring that ''the entire revenue derived from the state school fund and from the general state school tax shall be applied exclusively to the support of primary and grammar schools,'' and the corresponding provisions of sections 1622 and 1861 of the Political Code, require that the superintendent of

CXLVIII Cal.—25

public instruction, in performing the duty imposed upon him by section 1532 of that code, as amended March 18, 1905, of apportioning the balance of the state school fund to the several counties or cities and counties according to their "average daily attendance," make the apportionment solely in accordance with the "average daily attendance" upon the primary and grammar schools.

ID.—COMMON. SCHOOLS—SPECIAL SCHOOLS.—The provisions of sections 5 and 6 of article IX of the constitution, taken together, contemplate (1) the establishment of a uniform system of "common schools," including solely the primary and grammar schools, which shall be applicable and mandatory in every school district of the state, as to which all local or special laws are expressly forbidden, and to the support of which the entire revenue derived from the state school fund and the general state school tax shall be exclusively applied; and (2) the establishment, either by the legislature or by municipal or district authority, under statutes authorizing the same, of other schools, such as high and technical schools, which, however, can in no degree be supported from the state school fund, but must obtain their whole support from other sources.

ID.—KINDERGARTENS—MAINTENANCE OF IS OPTIONAL.—The provisions of sections 1617, 1662, and 1663 of the Political Code relative to kindergartens only show an intention on the part of the legislature to authorize the maintenance by any district at its option of kindergarten classes. The fact that it is entirely optional with any district to maintain such classes is sufficient to exclude them from the uniform and mandatory system of common schools called for by section 5 of article IX of the constitution, and consequently from the term "primary and grammar schools," as these words are used in section 6 of the same article in relation to the use which may be made of the general state school funds, and relegate them to that portion of the "public school system" which includes schools constituted by municipal or district authority and maintained from other sources.

ID.—ATTENDANCE ON KINDERGARTENS.—The attendance of children upon kindergarten classes established by the educational authorities of a municipality cannot be considered as a part of the "average daily attendance" of the schools of a county for the purposes of apportionment by the superintendent of public instruction of the state school fund.

APPLICATION for a Writ of Mandate to the Superintendent of Public Instruction of the State of California.

The facts are stated in the opinion of the court.

J. D. Fredericks, District Attorney, and Hartley Shaw, Chief Deputy, for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

ANGELLOTTI, J.—This is an application for a writ of mandate compelling the superintendent of public instruction of the state, in making his apportionment of the state school fund to the various counties, to include and consider as a part of the average daily attendance of the schools of plaintiff the attendance of children between the ages of four and five years, who have been regularly admitted to the kindergarten classes established by the educational authorities of certain cities of plaintiff county. It appears from the petition that defendant proposes to include the attendance on such classes of children between five and six years of age, but, in view of his conclusion as to the effect of certain provisions of our codes, has determined that children between the ages of four and five years should not be included. We do not deem it necessary to consider the argument relative to this position of the defendant, for we have concluded that the point made by the attorney-general upon the argument, to the effect that under our law the attendance upon kindergarten classes cannot be considered as a part of the attendance for purposes of apportionment of the state school fund, is well made. The rule laid down by the legislature for the guidance of the superintendent of public instruction in the apportionment of the state school fund is to be found in section 1532 of the Political Code, as amended March 18, 1905. It is there declared as follows, viz.: "It is the duty of the superintendent of public instruction, . . . Fourth—To apportion the state school fund; . . . in apportioning said fund he shall apportion to every county and to every city and county two hundred fifty dollars ($250) for every teacher determined and assigned to it on school census by the county or city and county school superintendent for the next preceding school year, as required, . . . and after thus apportioning two hundred fifty dollars on teacher or census basis, he shall apportion the balance of the state school fund to the several counties or cities and counties according to their average daily attendance as shown by the reports of the county or city and county school superintendents for the next preceding school year."

The question presented it will thus be seen is as to the meaning of the words "average daily attendance" as used in this section. It is admitted that in view of the provision

of section 6 of article IX of our constitution, declaring that "the entire revenue derived from the state school fund and from the general state school tax shall be applied exclusively to the support of primary and grammar schools," the corresponding provisions of sections 1622 and 1861 of the Political Code, and the decision of this court in *Stockton School District* v. *Wright*, 134 Cal. 64, [66 Pac. 34], only the attendance upon the primary and grammar schools is included within the words "average daily attendance" as used in this section. It was clearly shown in the case cited, where a similar provision regarding apportionment of state school moneys was construed, that it could never have been intended to include attendance upon other schools, such as high schools or evening schools, for the maintenance of which no part of the state school money could under the law be used. Plaintiff's case must therefore rest upon its claim that the kindergarten classes are under the law part and parcel of the primary schools of the state, that state school money may be appropriated to their maintenance, and that attendance thereon is attendance upon "primary schools," within the meaning of that term as used in the constitutional provisions quoted above. This is in fact the claim upon which plaintiff rests its case. The nature and object of kindergarten classes were quite fully discussed in the case of *Sinnott* v. *Colombet*, 107 Cal. 187, [40 Pac. 329]. It was there shown that the term "kindergarten" was devised to apply to a system elaborated for the instruction of children of very tender years, which, by guiding their inclination to play into organized movement and investing their games with an ethical and educational value, teaches, besides physical exercises, habits of discipline, self-control, harmonious action and purpose, together with some definite lesson of fact. It is apparent that the work contemplated by such a system is purely preliminary to, and entirely different in character from, the ordinary work of the common school, and is in fact designed to fit very young children, whose minds and bodies are solely because of their tender age not yet capable of the instruction contemplated in an ordinary school, for such school work.

It may be conceded that the work contemplated is of such a character that it might to some extent be included by the legislature in the general primary-school system of the state,

just as it may be conceded that the legislature may extend the general grammar-school course so as to include some subjects that have hitherto been pursued only in the more advanced schools, such as high schools. But the statutory provisions upon the subject of the kindergarten make it clear that the legislature has not made the same a part of the "system of common schools, by which a free school shall be kept up and supported in each district at least six months in every year," which, by section 5 of article IX of the constitution, the legislature is required to provide, but at most has made it only a part of the "public-school system" described in section 6 of the same article, in the same way that high schools, evening schools, normal schools, and technical schools established directly by the legislature, or by municipal or district authority, are parts of such public school system. The two constitutional provisions cited, taken together, contemplate (1) the establishment of a uniform system of "common schools," including solely the primary and grammar schools, which shall be applicable and mandatory in every school district of the state, as to which all local or special laws are expressly forbidden (Const., art. IV, sec. 25, subd. 27), and to the support of which the entire revenue derived from the state school fund and the general state school tax shall be exclusively applied; and (2) the establishment, either by the legislature or by municipal or district authority, under statutes authorizing the same, of other schools, such as high and technical schools, which, however, can in no degree be supported from the state school fund, but must obtain their whole support from other sources. The intention of the framers of the constitution to devote the whole of the revenue of the state school fund and the general state school tax exclusively to the support of the schools included in the first class mentioned above,—viz., those which are known as "common schools,"—and which by the constitution are required to be maintained in every district of the state, is too clear to admit of question.

Coming to a consideration of the only existing statutory provisions relative to kindergarten schools, we find the following, viz.: Section 1663 of the Political Code provides that "The public schools of California, other than those supported exclusively by the state, shall be classed as high schools,

technical schools, and grammar and primary schools (including kindergarten classes), and no teacher shall be employed to teach in any school if the certificate held by the teacher is of a grade below that of the school or class to be taught; . . . provided, that nothing herein contained shall be construed as prohibiting the employment of any person holding a valid special certificate for kindergarten work heretofore granted . . . as a teacher in any kindergarten class of a primary school." Section 1662 of the Political Code provides that "Every school, unless otherwise provided by law, must be open for the admission of all children between six and twenty-one years of age residing in the district; . . . provided, that in cities and towns in which the kindergarten has been adopted or may hereafter be adopted as part of the public primary schools, children may be admitted to such kindergarten classes at the age of four years." Section 1617 of the Political Code provides that "The powers and duties of trustees of school districts, and of boards of education in cities, are as follows: . . . Ninth. To exclude from schools children under six years of age; provided that in cities and towns in which the kindergarten has been adopted, or may hereafter be adopted, as a part of the public primary schools, children may be admitted to such kindergarten classes at the age of four years."

These are the only provisions relative to the kindergarten that are to be found in our statutes. They show at most an intention on the part of the legislature to authorize the maintenance by any district, at its option, of kindergarten classes, for the doing of a special work preliminary to the beginning of what is generally designated as primary school work. The fact that it is entirely optional with any district to do or not to do this preliminary special work is alone sufficient to exclude kindergarten classes from the uniform and mandatory system of common schools called for by section 5 of article IX of the constitution, and, consequently, from the term "primary and grammar schools," as those words are used in section 6 of the same article, in relation to the use which may be made of the general state school funds, and relegate them to that portion of the "public school system" which includes schools constituted by municipal or district authority, and maintained from other sources. In view of this fact, the

fact that the legislature may have declared that when the kindergarten is adopted by any district it shall be a part of the public primary schools is unavailing, so far as the question under consideration is concerned.  Such a declaration might make it a part of the public school system, maintainable from other sources than the state fund, but could not operate to bring it within the uniform and mandatory system of common schools applicable in every district, and to the support of which the general state funds must be exclusively applied, any more than could a declaration in regard to a technical or high school established by a district, to the effect that the same, if established, shall be a part of the public grammar schools, make such school a part of such system.   It must be borne in mind that we are not in any way questioning the power of the legislature to add to or take from the course of study to be pursued in the ''common schools'' of the state, but are simply discussing the *status* of a system useful only for the training of children, who have not attained the ordinary school age, which it is left optional with a district to adopt or not to adopt, in its relation to the ''common schools'' of the state, to which alone any portion of the general state fund may be devoted, and our conclusion is that it is no more a part of such common schools than is the high or technical school.   Under these circumstances, the case of *Stockton School District* v. *Wright,* 134 Cal. 64, [66 Pac. 34], is conclusive against plaintiff's claim.

We have no disposition to question the correctness of the decision in *Sinnott* v. *Colombet,* 107 Cal. 187, [40 Pac. 329]. That case involved the question as to the right of a teacher holding a special certificate for kindergarten work to be paid for her services in teaching kindergarten classes from the ''grammar and primary school fund'' of the city of San Jose, which fund consisted of money levied and collected by said city for school purposes within its limits other than for the maintenance of high schools.   The kindergarten system had been adopted by the city board of education as a special study to be taught in the public schools of said city.   There was no question in that case as to whether the kindergarten so adopted had become a part of the ''common-school system'' of the state, for the support of which general state school money could be used, and that question was in no way dis-

cussed. The decision, in effect, goes simply this far, that when a city has adopted this special system, the kindergarten becomes a part of the primary schools of such city, to the extent that it may legally be maintained at the expense of the city, just as a high or technical school may be so maintained, and does not compel a conclusion that the adoption by a district of this special system makes it a part of the "common schools" of the state or a part of the "primary schools" of the state, within the meaning of those words as used in the constitution. To construe the decision as warranting any such conclusion would, in our judgment, make it clearly opposed to the plain intent of the constitution. We are inclined to the opinion that the language of section 6 of article IX of the constitution is broad enough to authorize provision by the legislature for the establishment by districts, at their option, of kindergarten schools, as a part of the public school system of the state, supported from other sources than general state school money. At any rate, there is therein no express prohibition of any such provision, and the case of *Sinnott* v. *Colombet,* 107 Cal. 187, [40 Pac. 329], is authority for the proposition that this may be done.

The conclusion we have reached probably avoids all constitutional objections that may be successfully made to the legislation relative to the kindergarten. Construed in this way, such legislation does not conflict with the requirements of the constitution for a uniform system of common schools in every district of the state, for which alone the general state school money shall be used. This construction, we think, also overcomes the objection that if the kindergarten law is applicable only to "cities and towns" it is violative of other provisions of the constitution relative to local or special laws. Regarding the kindergartens as a special mode of education to be adopted and maintained at their own expense by such communities as desire them, there appear to be natural and intrinsic reasons which would warrant legislation making provision for their establishment in cities and towns, for we cannot conceive that there could be any demand for or possibility of the successful practical working of such a system outside of the centers of population, such as cities and towns, where there are a sufficient number of children of kinder-

garten age near enough to the school to avail themselves of the privilege thereof.

The alternative writ of mandate heretofore issued is discharged and the application for a peremptory writ is denied.

McFarland, J., Van Dyke, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

Shaw, J., deeming himself disqualified, does not participate in the foregoing.